PAUL MAX RAY, BY AND THROUGH HIS NEXT FRIEND, VONNO L. GUDGER,
v. J. E. RAY.

(Filed 26 February, 1941.)

**1. Parent and Child § 2—**

The old common law rule that the husband is conclusively presumed to be the father of his wife's child unless it is shown that he was impotent or not within the four seas, has been tempered so that now access or non-access of the husband is a fact to be established by proper proof and the question of legitimacy or illegitimacy is one for the jury upon such evidence, but proof of access still raises an irrebuttable presumption of legitimacy.

**2. Same—**

Neither testimony of the wife nor testimony of declarations made by her is competent to prove the nonaccess of her husband, but when the parentage of the child is directly involved the wife is competent to testify as to her illicit relations.

**3. Same—**

That the wife is notoriously living in open adultery is a potent circumstance tending to show nonaccess.

**4. Same: Bastards § 10—**

In an action by a child against his alleged putative father to compel the defendant to provide adequate support, a written contract entered into by the defendant and the child's mother, in which the defendant agrees to make certain contributions to the mother for the support of the child, is competent as being in the nature of an admission by the defendant, and the fact that it may tend to show indirectly declarations of the mother is not sufficient to justify its exclusion.

**5. Same—In this action by a child to compel defendant to provide support, evidence of defendant's paternity held sufficient for jury.**

This action was instituted in behalf of a child against his alleged putative father to compel the defendant to provide adequate support for the child. The evidence considered in the light most favorable to plaintiff tended to show that plaintiff's mother separated herself from her husband at the solicitation of the defendant, that she thereafter lived in open adultery with defendant for a period of two years, including the time when plaintiff was begotten, that the husband was living elsewhere and was not seen in the community where plaintiff's mother was living and did not have access to her, and that defendant entered into a contract with the mother in which the defendant agreed to make certain contributions to the mother for the support of the child. *Held:* The evidence is sufficient to be submitted to the jury, and defendant's motion for judgment as of nonsuit should have been denied.

APPEAL by plaintiff from *Armstrong, J.,* at September Term, 1940, of BUNCOMBE. Reversed.

Civil action to compel the defendant, alleged putative father of plaintiff, to provide adequate support for his said child.

Plaintiff, who was born 7 June, 1934, is the son of Jennie Allen, who is the wife of Hicks Allen. The evidence for plaintiff tends to show that in 1932 Jennie Allen, at the solicitation of the defendant, left her husband and went to live with her sister (who was a tenant on defendant's farm), where she remained for about two years. During this period defendant cohabited with her regularly in the home of her sister; that during a part of the time of the separation the husband was confined in the insane asylum and at other times he lived near Lenoir, N. C., and at Sandy Mush in Madison County; and that Hicks Allen did not go into the community or about Jennie Allen while she was living on defendant's farm.

Plaintiff offered in evidence a contract entered into between Jennie Allen and the defendant dated 31 July, 1934, in which the defendant agreed to pay Jennie Allen $75.00 in cash, one cow and 10 bushels of corn and $1.00 on the first day of each and every month until the plaintiff becomes 21 years of age, in settlement of his financial responsibility for the maintenance of plaintiff. On objection of defendant this contract was excluded.

Likewise, plaintiff tendered the evidence of Jennie Allen for the pur-
pose of showing the nonaccess of her husband during the time she was
living on the farm of defendant. He also tendered other witnesses for
the purpose of showing her declarations as to the paternity of plaintiff
and as to the nonaccess of her husband. On objection this testimony
was excluded and plaintiff excepted.

At the conclusion of the evidence for the plaintiff the court, on motion
of the defendant, entered judgment as of nonsuit. Plaintiff excepted
and appealed.

*W. K. McLean for plaintiff, appellant.*
*J. Scroop Styles for defendant, appellee.*

BARNHILL, J. Under the old English or common law rule a child
born of a married woman was presumed legitimate unless the husband
was shown to be impotent or not within the four seas—that is, he was
conclusively presumed to be legitimate so long as there remained a
possibility that the husband was the father. The presumption could
not be rebutted if the husband was capable of procreation and was within
the four seas during the period of gestation. *S. v. Pettaway,* 10 N. C.,
623; *Woodward v. Blue,* 107 N. C., 407; *S. v. Liles,* 134 N. C., 735;
*Ewell v. Ewell,* 163 N. C., 233, 79 S. E., 509; *West v. Redmond,* 171
N. C., 742, 88 S. E., 341; *S. v. Green,* 210 N. C., 162, 185 S. E., 670.
But this rather harsh rule has been tempered by the application of a
degree of common sense, so that now access or nonaccess of the husband
is a fact to be established by proper proof. The question of legitimacy
or illegitimacy of the child of a married woman, under the prevailing
rule, rests on proof as to the nonaccess of the husband and the evidence
in respect thereto must be left to the jury for determination. If there
was access in fact then, now, as formerly, there is a conclusive presump-
tion that the child was lawfully begotten in wedlock. "If a husband
have access, and others at the same time are carrying on a criminal
intimacy with his wife, a child born under such circumstances is legiti-
mate in the eye of the law." *Cope v. Cope,* 5 Car. & P., 604.

This modification of the common law rule was first indicated in
*Pendrell v. Pendrell,* Stra. 925, and the *Banbury Peerage Case* in the
House of Lords, 1 Sim & Stuart, 153, and is now consistently applied.
*Woodward v. Blue, supra; S. v. Pettaway, supra; S. v. Liles, supra;*
*Ewell v. Ewell, supra; West v. Redmond, supra; S. v. McDowell,* 101
N. C., 734; *S. v. Green, supra;* Schouler Dom. Relations, sec. 225.

The wife is not a competent witness to prove the nonaccess of the
husband, *S. v. Pettaway, supra; S. v. Wilson,* 32 N. C., 131; *S. v.*
*Green, supra; S. v. McDowell, supra; Ewell v. Ewell, supra; West v.*

*Redmond, supra;* nor may such be shown by evidence of declarations of the wife. *Ewell v. Ewell, supra; West v. Redmond, supra* (citing many authorities). Her testimony and declarations are excluded not only as violative of the confidential relations existing between husband and wife but pursuant to a sound public policy which prohibits the parent from bastardizing her own issue. However, she is permitted to testify as to the illicit relations in actions directly involving the parentage of the child, for in such cases, proof thereof frequently would be an impossibility except through the testimony of the woman. *S. v. Pettaway, supra; S. v. Wilson, supra; S. v. McDowell, supra.*

That the wife is notoriously living in open adultery is a potent circumstance tending to show nonaccess. "But if the husband and wife are living separate, and the wife is notoriously living in open adultery, although the husband have an opportunity of access, it would be monstrous to suppose that, under these circumstances, he would avail himself of such opportunity." *Cope v. Cope, supra; Woodward v. Blue, supra; Ewell v. Ewell, supra; S. v. Green, supra.*

Applying these principles, there was ample evidence offered to repel the defendant's motion for judgment as of nonsuit. When considered in the light most favorable to the plaintiff this testimony tends to show that his mother separated herself from her husband at the solicitation of the defendant; that she thereafter lived in open adultery with the defendant for a period of two years, including the time when plaintiff was begotten; that the husband was living elsewhere and was not seen in the community where plaintiff's mother was living and did not have access to her. In addition thereto there is the written contract, which was competent and which should have been admitted. It is in the nature of an admission by the defendant. That it may tend indirectly to show declarations of the mother is not sufficient to justify its exclusion. This aspect of the evidence can be guarded against by proper instruction.

The judgment below is
Reversed.