### STATE v. MAJOR GUTHRIE.

(Filed 27 November, 1907).

1. **Murder—Evidence—Proof, Order of—Trial Judge—Discretion— Appeal and Error.**

   While it is usual, upon trials of homicides, that the *corpus delicti* be first shown before the evidence of the defendant's guilt, the order of proof is usually left to the sound discretion of the trial Judge, and is not reviewable on appeal unless it is made to appear that some substantial injustice has been done.

2. **Same—Evidence—Demurrer—Declarations—Admissions.**

   Upon the trial of defendant for the murder of his wife, a demurrer to the evidence will not be sustained when the evidence tends to show motive based upon jealousy; repeated threats of defendant to kill his wife, made up to the very night of the homicide; a violent altercation in deceased's room, and that defendant refused to let a witness enter; marks around the throat of deceased, as if choked to death, together with an admission by defendant of his carrying out his threat.

3. **Same—Trial Judge—Mistrial—Appeal and Error—Record.**

   In capital felonies the trial Judge has not the same discretion to make a mistrial as in other cases, and to constitute reversible error in his refusal to do so the record should disclose how the defendant was unduly prejudiced. It is not reversible error for the court below to refuse to make a mistrial of the case because a child of one of the jurors was accidentally killed during the trial.

INDICTMENT for murder, tried before *Councill, J.,* and a jury, at August Term, 1907, of the Superior Court of DURHAM County.

STATE *v.* GUTHRIE.

The prisoner was convicted of murder in the first degree for the killing of his wife, Lizzie Guthrie, by means of choking or strangulation, under a bill of indictment in the proper statutory form. From the judgment of the Court sentencing him to death defendant appealed.

*Assistant Attorney-General Clement* for the State.
*Benjamin Lovenstein* for defendant.

BROWN, J. We find three assignments of error relied upon in this Court by the prisoner's counsel:

1. The admission of Louis Atkins' conversation with the prisoner before establishing the *corpus delicti.*

2. The refusal of the Court to sustain prisoner's demurrer to the whole evidence.

3. That Juror Homer's child was killed by an automobile accident during the progress of the trial and before defendant's counsel made his speech and before his Honor's charge.

It is contended with much earnestness by prisoner's counsel that the Court erred in receiving evidence tending to prove the guilt of the prisoner before requiring evidence to establish the *corpus delicti,* viz., the body of a crime—the body upon which a crime has been committed.

The *corpus delicti* has two components—death as a result, and the criminal agency of another as the means. It is fundamental that no person may be convicted of the commission of a crime until a crime has been proven. It is, therefore, usual in trials for homicide to prove the fact of death, and facts tending to prove that such death was brought about by some criminal agency, and then to offer proof connecting the accused with it. This order of proof is but just to the accused, and should be followed generally, although in this State the order of proof is usually in the sound discretion of the trial Judge, and will not be reviewed by us unless it is made plain that some substantial injustice has been done.

If any error was committed in receiving the declarations of

Louis Atkins before proof of death, we think it was cured by the subsequent introduction of abundant independent evidence tending to prove the fact of death by criminal means and connecting the prisoner therewith.    *Anthony v. State,* 32 So. Rep., 818; *Holland v. State,* 39 Fla., 178.

Mr. Wigmore writes with much sound sense on the subject: "To purport to preside over the investigation of truth, and then, at an inordinate expense of time, labor and money, to insist on reopening the entire investigation because a minor witness has been asked a minor question some one-half hour before he should have been asked, is to furnish a spectacle fit to make Olympus merry over the serious follies of mortals." Section 1867.

We think the Court properly overruled the demurrer to the evidence.    It is ample to go to the jury, and fully justifies their verdict, if credited by them.    There is evidence of a powerful motive, based upon intense jealousy; evidence of repeated threats to kill his wife, made up to the very night of the homicide; evidence tending to prove a violent altercation in the deceased's room, and that the prisoner refused to let a witness enter; evidence of marks around the throat of the deceased, tending to prove that she was choked to death, together with a declaration of the prisoner tending to prove an admission that he had carried out his threat.    The evidence in this case is stronger than that held to be sufficient in *State v. Jones,* 98 N. C., 651.

The third assignment of error is very imperfectly stated in the record, but we infer that, during the argument and before the prisoner's counsel had addressed the jury, a child of one of the jurors was killed by an accident, and that the prisoner's counsel moved for a discharge of the jury and for another trial before another jury.

The record fails to disclose how the prisoner was unduly prejudiced, and whether the trial was temporarily suspended or not.

The trial Judge has not the same unreviewable power to make a mistrial in capital felonies as in other cases. *State v. Jefferson,* 66 N. C., 309. The law is well stated in *State v. Tyson,* 138 N. C., 628: "It is well settled, and admits of no controversy, that in all cases, capital included, the Court may discharge a jury and order a mistrial when it is necessary to attain the ends of justice. It is a matter resting in the sound discretion of the trial Judge, but in capital cases he is required to find the facts fully and place them upon record, so that upon a plea of former jeopardy, as in this case, the action of the Court may be reviewed." It may be that inexorable necessity imposed a great hardship upon the afflicted juror, but we fail to see how the prisoner was unduly prejudiced, or any reason for reviewing the exercise of his Honor's discretion. Upon a careful review of the record, we find

No Error.